# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 26, 2009

## STATE OF TENNESSEE v. JOHN LEE SHIELDS

**Appeal from the Criminal Court for Bradley County**
**No. 07-461    Amy A. Reedy, Judge**

_____

**No. E2008-02786-CCA-R3-CD - Filed April 6, 2010**

_____

The Defendant, John Lee Shields, pled guilty to one count of reckless aggravated assault, a Class D felony, with sentencing left to the determination of the trial court. Following a sentencing hearing, the trial court sentenced the Defendant to two years suspended to probation after the service of ten months incarceration in the county jail. In this appeal as of right, the Defendant contends that the trial court erred in sentencing him to split confinement. Following our review, we affirm the judgment of the trial court as modified by this opinion.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Criminal Court is Affirmed as Modified.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Kenneth Lee Miller, Cleveland, Tennessee, attorney for appellant, John Lee Shields.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Stephen Hatchett, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

The record reveals that the Defendant was initially indicted in case number 07-157 for the aggravated assault of Danny Spurgeon. Although the guilty plea submission transcript is not included in the record on appeal, the presentence report and sentencing hearing transcript reflect that on August 18, 2006, the Defendant and a codefendant, Jesse Galindo, assaulted the victim in a bar restroom after the victim said something "sarcastic" to the

Defendant. The Defendant struck the victim to the ground and his codefendant repeatedly kicked and stomped the victim, leaving him unconscious and bleeding on the restroom floor. The severity of the victim's injuries required him to be transported via helicopter to a Chattanooga trauma center. The victim remained hospitalized until March 2007 when he returned home where he required twenty-four hour nursing care. The presentence report indicates that the victim "was paralyzed by the assault and a little over a year later died . . . . His death was ruled accidental by the coroner."

After the victim's death, the State dismissed the indictment alleging aggravated assault in case number 07-157. On November 14, 2007, the State indicted the Defendant and his codefendant for second degree murder by a superseding indictment in case number 07-461. Although the specific reasons are not apparent in the record before this court, on September 9, 2008, the State filed a Notice of Intent to Try Lesser Included Charge which indicates the State's decision to try the Defendant on the reduced charge of aggravated assault due to "information as to an independent intervening cause that may have directly caused the victim's death." The record also indicates that the codefendant pled guilty to aggravated assault and was sentenced to four years of incarceration in the Department of Correction.

Lisa Spurgeon, the victim's wife, recalled going to the bar to pick up her husband and described him as "buzzed" but not particularly drunk. She described him as a "funny" drunk and not someone who would act mean or angry when drinking. She said that her husband went to use the bathroom before leaving. She recalled seeing the Defendant and his codefendant leaving the bar and, within five minutes, someone began yelling that someone in the bathroom needed help. She testified that she ran to the bathroom to find her husband lying on the floor with a puddle of blood beneath his head. She testified that her husband suffered a lot of head trauma and injuries to his torso and arms and that he was placed on a ventilator while hospitalized. When he came home in March 2007, he required constant nursing care. Mrs. Spurgeon testified that the medical bills for his care totaled more than $250,000.

Detective Kevin White of the Bradley County Sheriff's Office testified that he interviewed the Defendant about one and a half to two hours after the incident. He testified that, although he could smell alcohol on the Defendant, the Defendant was not "overly intoxicated." The Defendant told Detective White that he was in the bathroom when the victim made a derogatory statement to him. The Defendant claimed that he was fearful the victim had a weapon so he struck him in the face, knocking him to the ground. The Defendant did not tell Detective White anything about his codefendant kicking the victim. Detective White stated that the investigators knew the victim had been kicked during the

assault because he had a shoe print on his face. Detective White testified that the codefendant confessed to kicking the victim.

The Defendant testified that he and his codefendant had consumed one-half gallon of liquor before arriving at the bar. He became sick and went to the bathroom to "throw up." He testified that his codefendant was in the bathroom helping him to stand up. The Defendant stated that the victim entered the bathroom and made a remark that "knocking him in the face with his private" would make him feel better. The Defendant claimed that he was sick and just wanted to leave the restroom so he knocked the victim with his left hand to exit the room. He stated that the victim fell to the floor. The Defendant testified that the events of the night were "sort of a blur" so he could not recall his codefendant kicking the victim although he did remember telling him to stop. The Defendant testified that he suffers from severe depression and has attempted suicide twice. He has custody of his two children.

The Defendant's father, Frankie Lee Shields, testified that he tried to stop the Defendant from going out that night because he was already so drunk while at the house. He stated that the Defendant suffered from anxiety and depression but stopped drinking alcohol after the incident. He acknowledged that the Defendant came home after the incident and that he had no injuries. Mr. Shields described the codefendant as someone with a bad temper who "just loses it."

The State argued that the Defendant was not completely candid about the incident as indicated by his reference of it as a fight when actually the victim never threatened or struck either the Defendant or his codefendant. The State also argued that a defendant convicted of aggravated assault is generally not eligible for community corrections supervision and that the Defendant failed to show any special needs allowing placement on community corrections. The Defendant asked for full probation or community corrections placement given his history of depression and suicide attempts and his minor participation in the offense.

The trial court noted the Defendant's history of aggressive behavior documented in the mental health records submitted at sentencing. The trial court found the existence of no enhancement factors and gave no weight to the factors argued by the Defendant. Through many references to proceedings not included in the record on appeal, the trial court described the incident as "one of the most obviously brutal violent beatings" it had ever seen. The trial court acknowledged the Defendant's lack of criminal history or lack of failed attempts at rehabilitation. Nevertheless, the trial court noted the Defendant's lack of candor, mental health history, and history of aggressive behavior as facts that weighed against the Defendant's potential for rehabilitation. Based upon these considerations, the trial court

imposed a two-year sentence of split confinement with ten months to serve prior to release on probation.

On appeal, the Defendant argues that the trial court should have granted him full probation or placed him on community corrections. The State argues that the trial court's sentencing decision regarding the manner of service of the sentence is supported by the record. However, the State correctly notes that the trial court erred in imposing a sentence of confinement in excess of the Defendant's release eligibility date. Following our review, we agree with the State. Therefore, upon remand, the trial court is directed to enter a corrected judgment consistent with this court's opinion, and the denial of full probation or community corrections is affirmed.

## ANALYSIS

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review:

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the

principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn.1986).

In determining whether the Defendant should have received an alternative sentence, the trial court was obliged to consider (1) the evidence, if any, received at the guilty plea and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statements the defendant made in his behalf about sentencing, and (8) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210 (b); -103(5)(2006); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The Defendant is a "standard offender convicted of a Class C, D, or E felony, [who] should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-30-102(6)(2006). Furthermore, a defendant is eligible for probation "if the sentence actually imposed upon the defendant is ten (10) years or less," and the trial court is required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a), (b)(2006). A defendant's potential for rehabilitation or lack thereof should be examined when determining if an alternative sentence is appropriate. Tenn. Code Ann. § 40-35-103(5). A defendant seeking full probation bears the burden of showing that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956)), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Initially, the State notes that the trial court erred in imposing a period of incarceration of ten months in this case because it exceeds the Defendant's release eligibility for his Range I, two-year sentence. Although not addressed by the Defendant on appeal, the sentencing hearing transcript reflects that the Defendant attempted to point out this issue to the trial

court, but the trial court interrupted counsel by stating, "I'm familiar [with] all that . . . . Two years after ten months is the sentence of the Court." This court has held that a period of confinement imposed in a split confinement sentence cannot exceed the release eligibility of the defendant. See, e.g., State v. Kellom Timbs, M2006-01908-CCA-R3-CD, 2007 WL 2044240 (Tenn. Crim. App. July 18, 2007), app. denied (Tenn. Dec. 17, 2007). Hence, the judgment of the trial court must be modified to provide for the release of the Defendant after serving no more than 219 days of the ten-month jail sentence in actual confinement. See Tenn. Code Ann. § 40-35-501(a)(3).

Relative to its denial of full probation, the trial court noted the Defendant's lack of criminal history and lack of past failed attempts at rehabilitation. However, the trial court expressed concern over the Defendant's lack of candor concerning the incident and the history of aggressive behavior exhibited against himself and others documented in the mental health records. The trial court correctly found that these facts weighed unfavorably towards the Defendant's potential for rehabilitation. See, e.g., State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). However, the trial court also found that the State had not overcome the presumption in favor of alternative sentencing and imposed the sentence of split confinement. We conclude that the trial court gave appropriate consideration to the sentencing factors in arriving at its determination. Furthermore, in light of the victim's injuries in this case, we further conclude that a sentence of full probation would depreciate the seriousness of the offense. Accordingly, we conclude that the trial court properly denied full probation in this case.

As to the trial court's denial of community corrections, the State correctly notes that a defendant convicted of a violent offense is generally precluded from community corrections placement. Tenn. Code Ann. § 40-36-106(a)(C). However, a defendant may qualify for community corrections based upon the special needs provision found at Tennessee Code Annotated section 40-36-106(c) which provides that:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

The trial court failed to make any specific findings regarding the Defendant's suitability for community corrections.  However, the record shows that the Defendant has a history of severe depression and suicide attempts stemming from a broken relationship with his girlfriend.  His history of mental health issues predates the offense in this case but, based upon the record before this court, does not seem to have contributed to the Defendant's criminal conduct.  Furthermore, the Defendant expressed no chronic drug or alcohol abuse – testifying instead that he had stopped consuming alcohol after this offense.  Under these circumstances, we conclude that the Defendant was not a suitable candidate for community corrections.  See State v. Boston, 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996).

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed as modified.  Upon remand, the trial court is directed to enter a modified judgment consistent with this court's opinion.

_____
D. KELLY THOMAS, JR., JUDGE